# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LARITA WILSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   16 C 3355 |
| | ) |
| WAL-MART STORES, INC., | ) |
| individually and d/b/a WALMART, | ) |
| and WALMART, individually, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendants' Wal-Mart Stores, Inc., individually, and doing business as Walmart, and Walmart, individually, (collectively, "Defendants") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and Northern District of Illinois Local Rule 56.1 against Plaintiff Larita Wilson ("Wilson"). For the following reasons, the Motion is granted in part and denied in part.

## BACKGROUND

Rule 56.1(a)(3) requires the "party moving for summary judgment to include with that motion 'a statement of material facts as to which the moving party contends there is no genuine issue and that entitle [it] to a judgment as a matter of law.'" *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) (quoting N.D. Ill. R. 56.1(a)(3)). Rule 56.1(b)(3)(B) mandates that Wilson file a response to a statement of uncontested material facts. Wilson failed to oblige.

There is a penalty imposed by Rule 56.1(b)(3)(C) for such a failure: "[a]ll material facts set forth in [Defendants' statement of undisputed facts] will be deemed to be admitted unless controverted by the statement of the opposing party." Of course, this does not "automatically result in judgment for the movant." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (citation omitted). The Court accepts as admitted only those factual assertions in Defendants' Rule 56.1 statement that are presented in accordance with the Local Rule, and it construes those facts and all reasonable inferences drawn from them in the light most favorable to Wilson, disregarding any argument, conclusion, or assertion unsupported by the evidence in the record. *See id.*; *Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015).

The following facts are taken from Defendants' Rule 56.1 statement of undisputed material facts and the record evidence. On May 11, 2015, around 4:30-4:45 p.m., Wilson entered a Wal-Mart store, located at 21410 South Cicero Avenue in Matteson, Illinois, through its lawn and garden department entrance. According to Wilson, while she "was looking down at the flowers," located on the floor of the aisle, her left shoulder made contact with a water valve handle that was attached to a pole. As a result, Wilson contends that she sustained injuries to her left shoulder. Prior to the incident, Wilson claims that she did not "see any part of the pole," nor did she notice the yellow and black caution sign that is displayed on the pole. Wilson alleges that Defendants negligently allowed the water valve handle to protrude into the aisle.

The parties dispute the direction that the water valve handle faced at the time of the incident. Wilson claims that "[i]t was sticking straight out at an angle," and that following the incident, an "employee . . . banged it back in place." Kristopher Young ("Young"), a

Sales Associate at the store during the relevant time, testified that when he viewed the valve, about "less than an hour" before he investigated the incident, it "was fine," and "if it w[ere] out of place, it would have caught [his] eye." Young stated that he did not know of anyone "ever having a problem negotiating their way past th[e] water valve or walking into it." Young also indicated that he had never seen anyone touch or use the handle—"[n]o one uses that water valve," he stated.

At her deposition, Wilson admitted that the lawn and garden department was "not really" busy when she arrived. Wilson stated that she did not have to maneuver around anything, nor did she "have to step over or avoid anything prior to the" incident. Wilson testified that she was in the department for "[m]aybe 10, 15 minutes" before the incident. Wilson claimed that she was walking and looking around at the pace of "a regular shopper." Wilson stated that she was able to see where she was walking. In fact, Wilson admitted that had she "been looking straight ahead," "she would have seen the pole and the water valve." Young also testified that nothing was blocking the view of the water valve on the date of the incident.

Eric Jones ("Jones"), Manager of the store, Sharon Pasko ("Pasko"), Assistant Manager, and Michael Tisdale ("Tisdale"), Asset Protection Manager during the pertinent time, were also deposed. Jones and Pasko both testified that they were unaware of any injuries ever occurring in the lawn and garden department of the store prior to May 11, 2015. Tisdale attested that "[t]here's never been an issue brought to [his] knowledge, and from . . . speaking to associates that work in that area, there was never an issue with the watering hose prior to th[is] incident."

3

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact arises where a reasonable jury could find, based on the evidence of record, in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The movant bears the initial burden of showing that no genuine issue of material fact exists." *Genova v. Kellogg*, 12 C 3105, 2015 WL 3930351, at *3 (N.D. Ill. June 25, 2015). "The burden then shifts to the nonmoving party to show through specific evidence that a triable issue of fact remains on issues on which the movant bears the burden of proof at trial." *Id.* The non-movant must go beyond the pleadings and support her contentions with documentary evidence of specific facts that demonstrate that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

**DISCUSSION**

Defendants contend that they are entitled to judgment as a matter of law on the Complaint. First, Defendants claim that they did not have a duty to protect Wilson because "the water valve handle was an open and obvious condition." Second, Defendants argue that Wilson's "negligence was more than 50% the proximate cause of the injury or damage for which she seeks recovery." In response, Wilson first contends that the condition was not open and obvious. Second, Wilson argues that even if it were open and obvious, the distraction exception applies, imposing a duty of care on Defendants. Finally, Wilson urges that a jury should determine whether she was contributorily negligent. This Court finds that the water valve was an open and obvious condition. Nonetheless, we conclude that whether

4

the distraction exception to the open and obvious condition applies, and to what extent, if any, Wilson was contributorily negligent are fact questions for the jury, as discussed below.

I.      **Open and Obvious Condition**

First, Defendants contend that the pole and valve handle were an open and obvious condition, thus, it did not have a duty to Wilson to warn of it. Wilson, in opposition, claims that questions of fact exist regarding "the physical nature of the pole and water valve, and whether a reasonable person in" her position would "recognize both the condition and the risk involved."

"[W]hether a duty exists is a question of law, and" courts applying Illinois law have "held that whether a condition is open and obvious is also a question of law where there is no dispute about the physical nature of the condition."[1]  *Wilfong v. L.J. Dodd Const.*, 930 N.E.2d 511, 520 (2010); *Belluomini v. Stratford Green Condo. Ass'n*, 805 N.E.2d 701, 706 (2004). Generally, retailers owe a "duty of reasonable care . . . to invitees and licensees." *Ward v. K Mart Corp.*, 554 N.E.2d 223, 232 (1990). However, they "are not ordinarily required to foresee and protect against injuries from potentially dangerous conditions that are open and obvious." *Bucheleres v. Chi. Park Dist.*, 665 N.E.2d 826, 832 (1996). "'Obvious' denotes that 'both the condition and the risk are apparent to and would be recognized by a reasonable [person], in the position of the visitor, exercising ordinary perception, intelligence, and judgment.'" *Deibert v. Bauer Bros. Const. Co.*, 566 N.E.2d 239, 241 (1990) (quoting Restatement (Second) of Torts § 343A, cmt. b, at 219 (1965)). "[W]hether a condition is obvious is determined by the objective knowledge of a reasonable person, not

---

[1] This Court has subject-matter jurisdiction through diversity of citizenship. We, therefore, apply Illinois substantive law, to which the litigants agree, citing Illinois law in their briefs. *See Hefferman v. Bass*, 467 F.3d 596, 599 (7th Cir. 2006).

the plaintiff's subjective knowledge." *Menough v. Woodfield Gardens*, 694 N.E.2d 1038, 1042 (1998). The record evidence establishes that there is no genuine dispute of material fact regarding the physical nature of the condition, and this Court finds that the water valve was an open and obvious condition.

Wilson's own testimony supports the open and obvious nature of the condition. Significantly, Wilson declared "that had she been looking ahead while she was walking, she would have seen the pole and the water valve." *See* Wilson's Deposition Testimony, at P. 74, lines 13–20 (Q: "If you had been looking straight ahead, would you have seen it?" A: "Of course I would have, but I was looking down at the flowers."). Wilson also testified that "the store was not busy at the time" of the incident, "she did not have to maneuver around anything in the lawn and garden department," "she was able to see where she was walking," and she was walking at the pace of "a regular shopper." Wilson cites to *Buchaklian v. Lake County Family Young Men's Christian Association* for the proposition "that summary judgment is not proper when reasonable minds could differ as to whether a condition was open and obvious . . . even when a plaintiff admits that he or she could have seen the condition if he or she had looked." 732 N.E.2d 596, 602 (2000). In the instant case, however, Wilson's testimony simply lends credence to what is already made clear by the record.

First, photo evidence depicts that the subject pole is constructed of metal, large in size, square in shape, and gray in color. A yellow and black caution sign is displayed on one side of the pole. On the sign, the word "caution" is written in bright yellow capital letters against a black backdrop, and underneath this word, "non potable water" is written in black capital letters against a yellow background. While the writing itself is not warning onlookers

of the presence of the pole and water valve, the colors catch the eye. The pole is without impediments for passersby on two of its four sides. One of the two obstructed sides contains a rolled-up water hose, and the other is blocked by a three-tier shelving unit that houses plants. The hose is situated on the floor of the side of the pole containing the caution sign. However, Wilson's testimony indicates that the hose may not have been present at the time of the incident. *See* Wilson's Deposition Testimony, at P. 56, lines 3–9 (Q: "[W]hat you had just indicated, it looks like a hose—" A: "Yeah, a hose. But they had just put that there, I guess. There was nothing there . . . . There wasn't anything around this pole but these plants on the other side."). The water valve is appended to one of the two unobstructed sides of the pole. It consists of multiple pipes and two staggered handles attached at varying heights—one higher and one lower. The pole is fixed to the ground, and the pipes attached thereto are fixed to the pole.

Wilson conceded that the photos of the water valve and the pole to which it is attached accurately depict these structures "as they existed at the time," except for "the direction of the small metal handle affixed to the bottom of the valve." Wilson claims that after the water valve handle "stabbed" her because it was "sticking . . . out." This fact, however, is immaterial to whether the condition and risk of a large, stationary and inflexible object, the pole, with something attached to it, the water valve, a fixture made up of multiple pipes, and the handles of that valve, would be recognized by a reasonable, ordinary shopper in Wilson's position. The direction of one of the small handles on these larger, immobile objects does not render less apparent the condition and risk of the entire structure.

Defendants' witnesses' statements, too, demonstrate that no issue of material fact exists regarding the open and obvious nature of the condition. Young testified that on May

11, 2015, there was "nothing blocking the view" of the water valve or the bottom of it, where the handle was located. Additionally, discovery did not yield any evidence of prior customer problems moving around the water valve, colliding with it, or being injured as a result of its presence.

Wilson attempts to analogize *Buchaklian* to the instant case. In *Buchaklian*, plaintiff "tripped and fell while walking across a mat" at the YMCA. 732 N.E.2d at 597. After she fell, "plaintiff observed that one particular piece of the mat was standing up approximately an inch or two higher than the other portions of the mat." *Id.* at 598. The appellate court held "that a question of fact exist[ed] as to whether the danger was open and obvious," noting that "[t]he evidence in the record can support a reasonable inference that the defect in the mat was difficult to discover because of its *size*, the lack of significant *color* contrast between the defect and the surrounding mat, or merely the short *time* that a person has in which to discover the defect as he or she takes a few steps toward the mat." *Id.* at 601 (emphasis added). In Response, Wilson applies these factors to the facts of this case. This Court is unpersuaded by her arguments. For one thing, these factors are not dispositive. *See id.* ("Based on any or all of these reasons, or perhaps others, the trial court should not have concluded as a matter of law that the defect in the mat was either open and obvious or that it could reasonably be expected to be discovered."). Nor are they particularly helpful to Wilson based on the facts of the instant matter.

First, the size factor militates against Wilson's conclusion that the condition was not open and obvious. Unlike with respect to a one or two inch raised piece of a black mat upon which one steps, reasonable minds could not differ as to whether a large, stationary pole with the word "caution" in bright, yellow letters and valve attached thereto constitute an open and

8

obvious condition. Second, time is not on Wilson's side. Wilson testified that she was in the lawn and garden department for "[m]aybe 10, 15 minutes" prior to the incident. This amount of time starkly contrasts with "the short time that a person has in which to discover the defect as he or she takes a few steps toward the mat." *Id.* at 601. Nor does the last factor aid Wilson. Wilson notes the ambiance inside of the home and garden department, debating the visibility of the pole. In describing the lighting, Wilson testified that "[i]t was like gloomy in there. It was cloudy outside. It was almost 5:00 o'clock. It was a little dim in the garden area. It wasn't a lot of light." Wilson further claimed that the color of the attached valve "wasn't white. It was like a dark color," "grayish," "covered in . . . seal pipes." Wilson also stated that she did not see the caution sign because "[i]t was on . . . the other side" of the pole. In rebuttal, however, Defendants emphasize "that the sun did not set for another three hours" after the incident. Defendants also stress Wilson's inconsistent testimony, where she stated that it was not raining, and that the weather was "nice" on the date of the incident. Lastly, Defendants point to the pictures that Wilson took of the pole and of the water valve following the incident to demonstrate that there was adequate light illuminating the area.

Contrary to Wilson's urgings, there is a great difference between an immovable structure that is part and parcel of a building's construction and a small defect on a black mat that mostly blends in with the rest of the floorcovering. The condition of the former is effortlessly discoverable. The time of day, the clouds in the sky, and the fact that the valve might have been gray in color, rather than white, does not render it less likely that a person in Wilson's position, browsing the garden department for ten to fifteen minutes, exercising ordinary perception, would not appreciate the condition of large, stationary objects, and the peril that accompanies them.

9

This Court concludes, based on the undisputed factual evidence, that the condition was open and obvious. Nonetheless, questions of fact remain whether the distraction exception applies to the instant case, and whether, or to what extent, Wilson was contributorily negligent.

## II. Evidence of Distraction

Defendants acknowledge that "distraction," as it is legally defined, serves as an exception that may impose a duty despite an open and obvious condition, while arguing that the evidence, as a matter of law, does not support the conclusion that it applies here. We disagree.

"[A] defendant-property owner owes a duty of care, despite an open and obvious condition, if he has reason to expect that the plaintiff-invitee's attention might be distracted so that she would not discover, or may forget that she had previously discovered, the obvious condition." *Sandoval v. City of Chi.*, 830 N.E.2d 722, 727 (2005); *Sollami v. Eaton*, 772 N.E.2d 215, 223 (2002); *Ward*, 554 N.E.2d at 232. Defendants claim that the majority of Illinois "courts have required evidence of distraction before imposing liability on a defendant." (citing *Belluomini*, 805 N.E.2d at 708 ("[F]or the distraction exception to apply, it must have been foreseeable that plaintiff would become distracted *and* there must be evidence that plaintiff actually became distracted.")). A genuine issue of material fact exists whether Wilson was distracted during the incident, and another exists regarding whether Defendants had reason to expect that Wilson may be distracted, leading her to forget or fail to discover the open and obvious nature of the condition or fail to protect herself against it.

First, Wilson has set forth evidence that she was distracted, stating that moments before the incident, her attention was directed at the plants on the floor. *See* Wilson's

10

Deposition Testimony, at P. 64, lines 3–8 (Q: "[J]ust before the accident, do you recall what, if anything, you were looking at?" A: "I was looking at the plants on the floor. I was looking down at all the plants, and I was walking. In the process of me walking, that's when I got stabbed in the arm by the metal object."). Defendants, in contrast, reason that the store was not busy, Wilson was walking and looking at the pace of "a regular shopper" for ten to fifteen minutes, and that nothing was blocking her view of the structure prior to the incident, arguing that Wilson was not distracted, but that she was merely inattentive. (citing *Bruns v. City of Centralia*, 21 N.E.2d 684, 694 (2014) (stating that if "simply looking elsewhere" were to "constitute[ ] a legal distraction, then the open and obvious rule would be upended and the distraction exception would swallow the rule"); *Sandoval*, 830 N.E.2d at 730; *Richardson v. Vaughn*, 622 N.E.2d 53, 57 (1993) (holding that landowners are "entitled to the expectation that their patrons will exercise reasonable care for their own safety")).

Second, Wilson cites to *Ward*, arguing that her actions were reasonably foreseeable. *See* 554 N.E.2d at 232–34. The Illinois Supreme Court held in *Ward* "that defendant's duty of reasonable care encompassed the risk that one of its customers, while carrying a large, bulky item" that he had purchased in the store "would collide with [a five foot tall concrete] post upon exiting through the customer door" because he was distracted. *See id.* Defendants first contend that *Ward* is inapplicable here because Wilson "was not carrying any kind of heavy or large object at the time of her accident nor was her view obstructed." Further, Defendants claim that Wilson did not have "to walk in the area where the pole was located," instead she "voluntarily *chose* to walk near the pole." (citing *Bruns*, 21 N.E.2d at 694 (holding that "self-created distractions" are not exceptions to the open and obvious doctrine where "plaintiff tripped and fell" on uneven sidewalk, claiming she was distracted looking at

11

the door and steps of an eye clinic)). Finally, Defendants allege that they exercised due care by keeping the aisle surrounding the pole and water valve clear, "as evidenced by a history of no prior incidents involving the pole of the attached water valve."

These arguments are not compelling. The relevant inquiry is not whether Wilson was carrying items blocking her view, but rather one of *foreseeability* on the part of Defendants. And, here, Defendants strategically placed merchandise on the floor of the lawn and garden department, expecting that customers would look at, and hopefully, purchase it. This situation is not self-created by Wilson. Moreover, merely because Defendants have in the past avoided accidents involving the water valve, or reports thereof, does not necessarily lead to the conclusion that they should not have anticipated that the combination of the structure in the lawn and garden department and the display of plants along the floor could lead to customer distraction and injury. *See Bulduk v. Walgreen Co.*, 63 N.E.3d 975, 981 (holding that defendant had duty to protect customer from large cleaning machine on store floor, even if it is an open and obvious danger because "her focus on finding the cosmetic items she wanted to purchase distracted her from noticing the danger the machine posed").

Whether Defendants should have anticipated that the plants they displayed along the floor aisle would draw the attention of its customers to the goods and away from a structural danger, rendering Wilson's injury reasonably foreseeable despite the obviousness of the condition, and whether Wilson was, in fact, distracted during the incident, are determinations for the jury. *See Buchaklian*, 732 N.E.2d at 602–03.

## III. Contributory Negligence

Finally, Defendants argue that Wilson's "contributory negligence is greater than 50% and bars her recovery." In Response, Wilson contends that a jury should determine whether she contributed to her own injuries. We agree with Wilson.

"A plaintiff is contributorily negligent when [s]he acts without that degree of care which a reasonably prudent person would have used for h[er] own safety under like circumstances and which action is the proximate cause of h[er] injuries." *Basham v. Hunt*, 773 N.E.2d 1213, 1226 (2002). A "plaintiff shall be barred from recovering damages if" her contributory fault "is more than 50% of the proximate cause of the injury or damage for which" she seeks recovery. 735 ILCS 5/2-1116(c). "Generally, the issue of contributory negligence is a question of fact for the jury." *Coole v. Cent. Area Recycling*, 893 N.E.2d 303, 309 (2008). It "become[s] a question of law 'when all reasonable minds would agree that the evidence and the reasonable inferences therefrom, viewed in the light most favorable to the nonmoving party, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand.'" *Id.* (quoting *Hunt*, 773 N.E.2d at 1226).

Defendants contend that this steep standard is met by the facts of this case. They rely heavily on two certainties: first, that Wilson "admitted she was not looking ahead as she was walking, and had she been looking ahead, she would have seen the water valve;" and second, that the pole and the water valve were fixed objects. In further support of their conclusion, Defendants point to Wilson's concessions that the store was not busy at the time of the incident, she "did not have to maneuver around anything," "was able to see where she was walking," and "was walking at a normal pace." Yet, these facts, coupled with Wilson's assertion that she was not looking ahead as she was walking because she was browsing the

plants that Defendants displayed on the aisle floor, do not lead to the conclusion that the evidence *so overwhelmingly favors* Defendants that *no contrary verdict could ever stand*.

Defendants cite to *Withey v. Illinois Power Company*, which found that plaintiff "not only failed to show the exercise of ordinary care," but "showed a complete want of care" in climbing a 35 foot, 7 inch television tower to remove an antenna before falling and sustaining burn marks, likely from electric wire. 177 N.E.2d 254, 259–60 (1961). This case is not comparable. The facts in the instant matter do not indicate that Wilson failed to watch where she was walking in the lawn and garden department of Wal-Mart because she was texting on her cellphone or staring at a car accident through the store window. Reasonable minds could find that Wilson was not at fault, or was less than 50% at fault, for engaging in an activity in which Defendants intended their customers to partake: shop. *See* Wilson's Deposition Testimony, at P. 55, lines 9–12 (stating the home and garden department had "a long aisle of plants . . . on the ground," and that she was "walking trying to decide which plants [she] want[ed] to buy"). This Court finds that how Wilson's "negligence, if any, compare[s] with" Defendants' is a "question[ ] of fact for the jury to decide in view of all the evidence in the case." *See Lind v. Beck*, 37 Ill. App. 430, 434 (1890).

## **CONCLUSION**

For the foregoing reasons, the Court grants in part and denies in part Defendants' Motion consistent with this Opinion.

/s/ Charles P. Kocoras
Charles P. Kocoras
United States District Judge

DATE: April 20, 2017

14